UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARISHA HEMPHILL,**<br><br>    Plaintiff,<br><br>v.<br><br>**ST. MARY'S COUNTY HOUSING AUTHORITY,**<br><br>    Defendant. | Civ. A. No. 26-64 (JDB) |

## MEMORANDUM OPINION & ORDER

Larisha Hemphill seeks a temporary restraining order (TRO) against St. Mary's County Housing Authority under the Americans with Disabilities Act and Fair Housing Act; she asks for $500,000 in funding for her relocation and childcare expenses. Hemphill is a pro se plaintiff, so this Court construes her filings liberally. See Zinda v. Johnson, 463 F. Supp. 2d 45, 48 (D.D.C. 2006). Nevertheless, for the reasons set forth below, the Court will deny Hemphill's request.

## LEGAL STANDARD

A TRO "is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion." Postal Police Off. Ass'n v. U.S. Postal Serv., 502 F. Supp. 3d 411, 418 (D.D.C. 2020) (quotation omitted). To obtain such an order, a party must establish "(1) that [s]he is likely to succeed on the merits, (2) that [s]he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [her] favor; and (4) that an injunction is in the public interest." Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011)); see also

Dellinger v. Bessent, No. 25-5028, 2025 WL 559669, at *3 (D.C. Cir. Feb. 15, 2025) ("The standard for obtaining either a TRO or a preliminary injunction is identical."). "The balance-of-equities and public-interest factors merge if the government is the opposing party." Glob. Health Council v. Trump, 153 F.4th 1, 12 (D.C. Cir. 2025) (quotation omitted).

## PROCEDURAL HISTORY

Hemphill filed her complaint on January 9, 2029. The same day, she moved for a TRO. ECF No. 3. The case was assigned to this Court on January 30, 2026, upon Hemphill's payment of the filing fee. The Court resolved Hemphill's motion the same day, denying it without prejudice for failure to notify the opposing party under Federal Rule of Civil Procedure 65(b)(1). The Court also denied a motion for reasonable accommodation, which requested permission to appear virtually in all proceedings, without prejudice to refiling on a case-by-case basis. ECF No. 4.

On February 3, 2026, Hemphill filed a renewed motion for a TRO and a motion for interim relief reflecting substantially the same request as her original TRO motion. Hemphill included a screenshot to an email where she told defendants that "I will be refiling my Emergency Motion in the U.S. District Court." See Renewed Mot. for TRO (ECF No. 9) 8. She also renewed her motion for reasonable accommodation, which now includes an additional request for the same emergency relief as her motion for a TRO. ECF No. 7. Additionally, Hemphill filed an "Emergency Motion for Interim Relief," which contains a substantively identical request as her motion for a TRO. ECF No. 8. Accordingly, the Court considers the three motions together.

St. Mary's County Housing Authority has not appeared.

## ANALYSIS

Although brief, Hemphill's complaint and motion for a TRO are difficult to parse. But whatever her precise claims, she is not entitled to the interim relief she seeks.

As a preliminary matter, a TRO is a form of equitable relief, see State v. Musk, 769 F. Supp. 3d 1, 5 (D.D.C. 2025), and "there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity," Starbucks Corp. v. McKinney, 602 U.S. 339, 345 (2024).  Accordingly, the Supreme Court has cautioned that courts should be skeptical of entering injunctions that sound in damages.  See, e.g., Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308 (1999) (holding preliminary injunction against transferring encumbered funds fell outside equitable jurisdiction); De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212 (1945) (holding preliminary injunction to restrain assets from removal from the country fell outside equitable jurisdiction).

Hemphill asks for $500,000 in monetary relief.  And "[m]oney damages are, of course, the classic form of legal," as opposed to equitable, "relief."  Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 224 (2002); see also DeVillier v. Texas, 601 U.S. 285, 292 (2024) (holding money damages are "a remedy that is legal, not equitable, in nature").  Her request is thus beyond this Court's equitable jurisdiction on a TRO application.

It is unclear whether Hemphill seeks anything in addition to monetary relief.  Out of an abundance of caution, the Court analyzes the TRO factors and concludes that emergency relief is unwarranted.

I.      **Likelihood of success on the merits**

Hemphill alleges violations of the Americans with Disabilities Act and the Fair Housing Act.  She does not explain her causes of action or ventilate the theories under which they might entitle her to relief.  So, this Court, mindful of the duty to treat pro se litigants' filings liberally, attempts to construct arguments out of her various filings.  The Court construes Hemphill's request as pleading claims under Title II of the Americans with Disabilities Act and the Fair Housing Act.

Title II of the Americans with Disabilities Act (ADA) provides a cause of action for disabled plaintiffs to sue covered defendants who deny them the opportunity to participate in or benefit from services, programs, or activities, or otherwise discriminate against them. 42 U.S.C § 12132; see United States v. Georgia, 546 U.S. 151, 154 (2006) ("Title II authorizes suits by private citizens for money damages."). To establish disability-based discrimination, a plaintiff must show (1) that she is an individual with a disability; (2) that she is being excluded from participation in or is being denied benefits, services, programs, or other activities for which a public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such treatment is caused by her disability. See Alston v. District of Columbia, 561 F. Supp. 2d 29, 37 (D.D.C. 2008).

To show discriminatory failure to provide a reasonable accommodation under the Fair Housing Act, a plaintiff must establish that (1) she suffers from a disability; (2) defendants knew or reasonably should have known of her disability; (3) accommodation of the disability may be necessary to afford her an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. Giebeler v. M & B Assocs., 343 F.3d 1143, 1147 (9th Cir. 2003).

The record before the Court does not show that Hemphill is likely entitled to relief under either the ADA or the FHA. As an initial matter, it is entirely unclear what Hemphill's disability is. Hemphill appended several letters from the Social Security Administration to her motion, but they only show that she receives benefits, not the reason for those benefits or that she is entitled to any particular accommodations. Nor does Hemphill provide any facts or direct evidence of St. Mary's County Housing Authority making decisions based on her disability status. The Court thus lacks a basis to connect any adverse action Hemphill may have faced to her disability. See

4

Baskerville v. CBS News Inc., Civ. A. No. 18-2522, 2022 WL 612608, at *7 (D.D.C. Mar. 2, 2022) (denying disability discrimination claim for failure to show causation).

Nor do her allegations about adverse actions clarify the matter. In her initial motion for a TRO, Hemphill stated that the "key violations include: failure to test my actual unit for mold, double-digit moisture levels, refusal to pay their portion of rent . . . and unaddressed retaliation." Initial TRO (ECF No. 4-1) 4. It is unclear how these alleged wrongs are connected to Hemphill's disability status. Indeed, they are all harms that could be suffered regardless of disability. She also references a federally funded work program, Refiled Mot. (ECF No. 8) 4, but does not explain how defendant interfered with her ability to participate in that program, what reasonable accommodation defendant was obligated to provide, or how any adverse action regarding her request was tied to her disability status.

Hemphill also raises the possibility of being evicted. Refiled Mot. (ECF No. 8) 1. But it is unclear what her basis is for challenging this eviction. An eviction is not, by itself, a violation of the ADA or FHA. And Hemphill has included no facts in her motions that suggest that her occupancy of her apartment is an accommodation tied to her disability or that she is being evicted for discriminatory reasons.

On such a sparse record, the Court cannot conclude that Hemphill is likely to succeed on the merits.

## II.     Irreparable harm

It is unclear why any harm Hemphill may suffer during the pendency of this case would be irreparable. The D.C. Circuit has established a "high standard for irreparable injury." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006). The harm must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need

for equitable relief to prevent irreparable harm." League of Women Voters of U.S. v. Newby, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citation modified).

Hemphill does not meet the high bar to demonstrate irreparable harm. The magnitude of her asserted harms is unclear. Hemphill says she faces "ongoing housing displacement, health risks and denial of legally required accommodations." Refiled Mot. (ECF No. 8) 1. But the only specific issues she raises are moisture levels, mold testing, and disagreements over the appropriate portion of rental assistance owed, which do not rise to the high level required to justify a TRO. Without more, Hemphill has not demonstrated "how the harm [she] will suffer absent injunctive relief is in any way extraordinary." Jones v. District of Columbia, 177 F. Supp. 3d 542, 547 (D.D.C. 2016).

Moreover, Hemphill has not established that any harm she might face in terms of eviction is imminent. She represents that she is currently in state court eviction proceedings but has not said that she faces a firm date of eviction. Nor has she explained why the other issues she raises, like the moisture testing, threaten an imminent injury. Accordingly, the Court cannot conclude that an eviction is "so imminent that there is a clear and present need for equitable relief to prevent irreparable harm." Newby, 838 F.3d at 7–8.

### III.   Balance of the equities and the public interest

St. Mary's County Public Housing Authority is a government entity, so the last two factors merge into a single analysis. Glob. Health, 153 F.4th at 12. "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief[,] . . . pay[ing] particular regard for the public consequences" that would result from granting the emergency relief sought. Winter v. NRDC, 555 U.S. 7, 24 (2008). Additionally,

6

"courts of equity should [have] particular regard for the public consequences in employing the extraordinary remedy of injunction." Id.

On the sparse record presented, the balance of the equities and public interest is at best neutral. Hemphill asserts that she will be harmed by continued exposure to substandard conditions and potential eviction. These are substantial interests, but the lack of detail in her filings makes it impossible to determine the degree of harm she faces without interim relief. On the other hand, a TRO, especially given the substantial sum of money sought by Hemphill, would also "jeopardize the public's interest in an orderly, fair, and efficient administration" of St. Mary's housing programs. The Nation Magazine v. Dep't of State, 805 F. Supp. 68, 74 (D.D.C. 1992). Public housing authorities have an important interest in continuing to provide their regular services without disruption. And taxpayers have a substantial interest in not paying the $500,000 in requested relief, which the government may not be able to recoup in full if it ultimately prevails. See, e.g., Dep't of Educ. v. California, 604 U.S. 650, 651-52 (2025). Accordingly, these factors do not support granting a TRO.

## CONCLUSION

Hemphill may not seek damages through equitable relief and has not carried her burden with respect to the TRO factors in any event. Hemphill may pursue her claim through the ordinary course of civil litigation, if she so wishes. Accordingly, the Court denies Hemphill's application for a TRO.

\* \* \*

Upon consideration of the [7] emergency motion for reasonable accommodation, [8] emergency motion for interim relief, and [9] renewed motion for temporary restraining order, and the entire record herein, it is hereby **ORDERED** that the motions are **DENIED.** The Court will

consider requests from Hemphill to appear remotely for proceedings on a case-by-case basis, should a need arise at that time.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: February 6, 2026